**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Agustin Soto Rivera, | No. CV-21-00296-TUC-JGZ (DTF) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

Petitioner Agustin Soto Rivera (Rivera or Petitioner) presently incarcerated in Arizona State Prison Complex-Santa Rita in Tucson, Arizona, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondents filed their answer on November 16, 2021. (Doc. 10.) Petitioner filed his reply on January 18, 2022. (Doc. 14.) This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. (Doc. 7 at 4.)

As more fully set forth below, this Court recommends the Petition be denied and this matter be dismissed.

I.      **BACKGROUND**

        **a.  Factual Background and Investigation**

On March 18, 2012, three individuals, including Petitioner, broke into the victims' house. (Doc. 10-1 at 47-48.) The intruders robbed the three victims at gunpoint. *Id.* The men took a victim's cellular phone, which the victim later tracked and relayed the phone's location to the police. *Id.* at 47, 49. Police officers found Petitioner and his co-defendant

Rosario Soto Jr. (Soto) in the desert. *Id.* at 47, 51. On Petitioner's person was a wallet belonging to one of the victims. *Id.* at 47, 51. Police found other incriminating evidence nearby. *Id.* at 47, 50-53.

According to the Arizona Court of Appeals:

> ¶ 2 Rivera and co-defendant Rosario Soto Jr. were indicted on three counts of armed robbery, three counts of aggravated assault, three counts of aggravated robbery, three counts of kidnapping, one count of first-degree burglary, one count of possession of marijuana, one count of fleeing from a law enforcement vehicle, and one count of possession of a deadly weapon by a prohibited possessor. At his arraignment, the court advised Rivera that if he failed to attend any scheduled hearing, including his trial, the court could proceed in his absence.

> ¶ 3 In June 2012, the court set trial for March 2013, and again admonished Rivera that trial could take place in his absence should he fail to appear. Rivera acknowledged that he understood the admonition.

*State v. Rivera (Rivera I)*, No. 2 CA-CR 2014-0087, 2016 WL 389490, ¶¶ 2-3 (Ariz. App. Feb. 2, 2016).[1] Then the trial date was continued. (Doc. 10-1 at 55-56.) On March 4, 2013, the court held a settlement conference. (Doc. 10-2 at 82.) The judge explained to the defendants that "if they go to trial, it's essentially a life sentence for both of them." *Id.* at 85:16-17. He also told them he typically sentenced consecutively when there are multiple victims and guns, as was the case. *Id.* at 85:19-22. The prosecutor offered a plea agreement of a class two felony and two class three felonies, with consecutive or concurrent nature to be decided by the judge. *Id.* at 88:11-15, 89:17-19. The court explained the sentencing range to Petitioner. *Id.* at 89:11-19. On March 18, 2013, the court held a status conference to continue discussing the plea negotiations. *Id.* at 98, 100. The prosecution repeated the plea offer. *Id.* at 101:8-16. The prosecutor explained Petitioner's exposure at trial. *Id.* at 102-03. The judge asked the defendants if they had any questions, and they did not respond. *Id.* at 106:22-24. The offer was open for one week. *Id.* at 107:18-19. In April 2013, the trial

---

[1] The facts as recited by the court of appeals are entitled to a presumption of correctness. *See* § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in Arizona Supreme Court opinion should not be afforded presumption of correctness)

court set trial for September 10, 2013. *Id.* at 63. The trial court confirmed with both defendants that they understood the trial was set for September 10th and that they needed to appear. *Id.* at 64:1-7. There was no discussion about the plea agreement. *Id.* at 63-64. On September 4, 2013, Soto's counsel filed a motion to preclude a trial in absentia citing *United States v. Crosby*, 506 U.S. 225 (1993). *Id.* at 29. Petitioner's counsel joined the motion on Petitioner's behalf. *Id.* at 35. The trial court denied the motion. *Id.* at 37:17-20.

> ¶ 5 Rivera and Soto failed to appear for trial on September 10, 2013. The trial court found Rivera had been told of his new trial date and warned of the consequences of failing to appear. As a result, the court found Rivera's absence voluntary and proceeded with trial in absentia. After a three-day trial, Rivera was convicted of two counts of armed robbery, one count of attempted armed robbery, three counts of aggravated assault with a deadly weapon or dangerous instrument, two counts of aggravated robbery, one count of attempted aggravated robbery, one count of burglary in the first degree, one count of possession of marijuana, and one count of fleeing from a law enforcement vehicle. Following the verdicts, the court issued a warrant for Rivera's arrest.

> ¶ 6 Rivera was eventually apprehended and appeared in-custody in November 2013. The trial court ultimately sentenced him to concurrent and consecutive terms totaling 31.5 years' imprisonment. Rivera appealed and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

*Rivera I*, 2016 WL 389490, ¶¶ 5-6. At sentencing, Petitioner did make the following statement to the court: "I mean, I was under the impression that we were going to get a continuance today because I got Laura Udall to step in. I feel I wasn't represented right." (Doc. 10-2 at 76:8-11.) The court continued with the sentencing. *Id.* at 78.

### b.  Proceedings in the Arizona Court of Appeals

Petitioner filed a timely notice of appeal. (Doc. 10-1 at 32.) He argued the trial court had violated his constitutional right to be present at his trial by trying him *in absentia* and that the trial court had erred in finding the absence was voluntary under Rule 9.1, Ariz. R. Crim. P. *Id.* at 35, 55-62. The appellate court affirmed Petitioner's convictions. *Rivera I*, 2016 WL 389490, ¶ 23. The court concluded that "regardless of whether a defendant chooses to absent himself before or during trial, the critical question remains the same: Did

the defendant voluntarily, knowingly, and intelligently waive his right to be present?" *Id.* ¶ 15. The court found no error with the trial court's finding that Petitioner had been voluntarily absent from trial. *Id.* ¶ 22.

### c. Proceedings in the Arizona Supreme Court

Petitioner petitioned the Arizona Supreme Court for review. (Doc. 10-1 at 96.) He raised the arguments he presented below. *Id.* at 96-105. On June 16, 2016, the Arizona Supreme Court denied the petition. (Doc. 1-1 at 10.)

### d. State Court Post-Conviction Relief Proceeding

On June 27, 2016, Petitioner filed a timely notice of post-conviction relief. (Doc. 10-1 at 109.) The post-conviction court appointed counsel. *Id.* at 114. The proceedings were stayed pending resolution of a restitution issues. *Id.* at 116, 118. On August 13, 2018, Petitioner's counsel notified the court that she did not "find any arguably meritorious legal issue to raise in a Petition for Post-Conviction Relief." *Id.* at 120. The court allowed Petitioner to file a pro se petition. *Id.* at 123. Petitioner filed a declaration and a petition. *Id.* 125, 128. He argued his right to choose his counsel had been violated when sentencing proceeding without his retained counsel. *Id.* at 133-34. He also contended that his trial counsel had been ineffective because he failed to "explain the cryptic plea colloquy" and to "obtain a written plea agreement or proposed written plea agreement" for Petitioner to consider. *Id.* at 139. Finally, Petitioner asserted his appellate counsel had been ineffective because he did not raise Petitioner's claim that he had been denied the right to retain counsel for sentencing. *Id.* at 142-43.

The post-conviction court stated there was no indication that Ms. Udall had been retained, even though Petitioner had received "a significant number of time extensions in order to contact Ms. Udall to acquire an appropriate affidavit from Ms. Udall to corroborate the Petitioner's petition." (Doc. 10-2 at 5.) Further, the court concluded sentencing counsel was not deficient and there was no indication that Ms. Udall could have change the sentence. *Id.* The court described the record of the *Donald*[2] hearing[3] as "illuminating." *Id.*

---

[2] *State v. Donald*, 10 P.3d 1193 (Ariz. App. Sept. 26, 2000).
[3] The Court will follow the Arizona Court of Appeals and refer to both the March 4, 2013

The court was satisfied that the *Donald* hearing had provided sufficient explanation such that Petitioner was "aware of his exposure and knowingly, intelligently, and voluntarily rejected the plea agreement." *Id.* at 6. The court then concluded appellate counsel had acted in a reasonable and tactically sound manner in not bringing the choice-of-counsel claim when there was no proof Petitioner had retained Ms. Udall. *Id.* The court summarily dismissed the petition for post-conviction relief without an evidentiary hearing. *Id.*

Petitioner petitioned for review with the Arizona Court of Appeals. *Id.* at 8. He argued the post-conviction court had abused its discretion by concluding that his right to counsel of choice was not violated and applied the incorrect legal standard in its determination. *Id.* at 11-13. Second, Petitioner asserted the court had abused its discretion in denying an evidentiary hearing into his claim of ineffective assistance of counsel during plea negotiations. *Id.* at 14-15. Finally, he maintained his appellate counsel had been ineffective in failing to assert a choice-of-counsel claim. *Id.* at 15. The appellate court granted review but denied relief. *State v. Rivera (Rivera II)*, No. 2 CA-CR 2020-0081-PR, 2020 WL 4436259, ¶ 18 (Ariz. App. Aug. 3, 2020). The appellate court concluded Petitioner could have raised a claim regarding denial of Sixth Amendment right to counsel of choice on direct appeal. *Id.* ¶ 8. Because Petitioner did not invoke this claim on direct appeal, it was precluded. *Id.* Further the appellate court concluded the record did not support Petitioner's assertion that he had retained counsel and that she had notified the court. *Id.* ¶ 9. Thus, the appellate court determined the post-conviction court had not abused its discretion in denying an evidentiary hearing. *Id.*

The Arizona Court of Appeals considered Petitioner's claim that his appellate counsel had been ineffective because he had failed to argue Petitioner had been denied the right to choose and retain counsel for sentencing. *Id.* ¶ 10. The appellate court agreed with the post-conviction court that "the record is void of any substantive proof that [Petitioner] retained Ms. Udall as counsel for sentencing." *Id.* Thus, the appellate court concluded

---

settlement conference and the March 18, 2013 *Donald* hearing as the "*Donald* hearing." *State v. Rivera (Rivera II)*, No. 2 CA-CR 2020-0081-PR, 2020 WL 4436259, ¶ 13 n.5 (Ariz. App. Aug. 3, 2020).

appellate counsel's performance was not deficient. *Id.*

Finally, the appellate court considered the claim Petitioner's trial counsel had been ineffective during plea negotiations. *Id.* ¶ 11. The court agreed the trial court had explained the risks of going to trial. *Id.* ¶ 14. The court stated the record did not necessarily show that trial counsel had advised Petitioner about the merits of the offer compared to the chances of success at trial. *Id.* However, the court still concluded that Petitioner had not shown any prejudice. *Id.* ¶ 15. Petitioner did not file a motion for reconsideration or a petition for review. (Doc. 10-2 at 27.) On January 20, 2021, the Arizona Court of Appeals filed its mandate. *Id.*

### e.  Federal Habeas Corpus Proceeding

On July 21, 2021, Petitioner placed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in prison mailing system. (Doc. 1 at 15.) The Petition was filed with the Court on July 26, 2021. (Doc. 1.) Petitioner alleges the following grounds for relief:

"Ground One: Sixth Amendment right to be present at trial as applied to the state through the Fourteenth Amend., violated." *Id.* at 5. "Ground Two: Sixth and Fourteenth Amendment[s] violated when the trial court found Plaintiff's absence from trial voluntary." (Doc. 1 at 7.) Petitioner incorporates the facts from Ground One. *Id.* Petitioner argues his attorney advised him to "talk to [a] travel agent." (Doc. 1-2 at 4.) Based on the advice from his attorney, Petitioner argues he did not have "freedom of choice" necessary to make a voluntary waiver of the right to presence at trial. *Id.*

"Ground Three: Sixth and Fourteenth Amendments violated when Petitioner denied right to counsel of choice; Appellate counsel ineffectiveness." (Doc. 1 at 8.) This is two related claims. Petitioner asserts he retained counsel for sentencing. (Doc. 1-2 at 5.) He further contends the trial court failed to inquire into this request for new counsel and continued with sentencing despite the deteriorated attorney-client relationship. *Id.* Petitioner argues he was denied a fair opportunity to develop the record regarding whether Laura Udall, esq., had been retained. *Id.* Appellate counsel did not make any argument regarding choice of sentencing counsel. *Id.* at 6-7.

1    "Ground Four: Sixth Amendment violated when trial counsel was ineffective during

2    plea negotiations." (Doc. 1 at 10.) Petitioner explains the state offered a plea bargain in

3    March 2013. *Id.* However, Petitioner claims his trial counsel did not sufficiently explain

4    the plea agreement or obtain a written plea agreement. (Doc. 1-2 at 8.) Petitioner further

5    challenges the state court's determinations as unreasonable. *Id.* at 8-9.

6    Petitioner asserts his Petition is timely. (Doc. 1 at 13-14.) He requests the Court

7    grant habeas corpus relief, and either vacate the convictions and sentences or conduct an

8    evidentiary hearing on grounds three and four. *Id.* at 15.

9    On October 7, 2021, Respondents were ordered to respond to the Petition. (Doc. 7.)

10   They filed their response on November 16, 2021. (Doc. 10.) Respondents argue Petitioner's

11   claim that he was denied the right to counsel of his choice at sentencing is procedurally

12   defaulted. *Id.* at 11. Respondents conclude that the remainder of Petitioner's claims lack

13   merit. *Id.* at 15-21.

14   **II.    TIMELINESS**

15   Whether a petition is time-barred by the statute of limitations is a threshold issue

16   that must be resolved before considering other procedural issues or the merits of the

17   individual's claim. *See White v. Klitzkie,* 281 F.3d 920, 921-22 (9th Cir. 2002). The

18   Anti-Terrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations

19   applies here. *See* 28 U.S.C. § 2244(d)(1); *Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir.

20   1999). As potentially applicable here, the limitations period begins to run on the date when

21   "the judgment became final by the conclusion of direct review or the expiration of the time

22   for seeking such review" or "the date on which the factual predicate of the claim or claims

23   presented could have been discovered through the exercise of due diligence," whichever is

24   later. § 2244(d)(1)(A, D).

25   "The time during which a properly filed application for State post-conviction or

26   other collateral review with respect to the pertinent judgment or claim is pending shall not

27   be counted toward any period of limitation." § 2244(d)(2). An PCR application is properly

28   filed if its "delivery and acceptance are in compliance with the [state's] applicable laws and

rules governing filings." *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005), *amended*, 439 F.3d 993 (9th Cir. 2006) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). Put another way, applications must comply with provisions setting forth a condition to filing, as opposed to a condition to obtain relief. *Artuz*, 531 U.S. at 11. Not every state procedural bar prevents an application from being properly filed for statutory tolling. *Id.* at 10-11. State courts may consider the merits of an application without indicating a conclusion on the application's timeliness. *Carey v. Saffold*, 536 U.S. 214, 226 (2002).

In Arizona, an application for post-conviction relief commences when a notice of post-conviction relief is filed. *Isley v. Ariz. Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir. 2004). "State review ends when the state courts have finally resolved an application for state postconviction relief." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007). Thus, once the state's "highest court has issued its mandate or denied review, no other state avenues for relief remain open," then the application is final and statutory tolling ends. *Id.* If the petitioner appeals to the Arizona Supreme Court, then the application is no longer pending once the court denies relief. *Isley*, 383 F.3d at 1055.

Here, Petitioner's sentence became final on September 14, 2016. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (explaining direct review is final when time to pursue direct review expires, if petitioner who do not pursue direct review to Supreme Court of United States); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007) (direct appeal final when time to seek review of decision expires); *see also* Ariz. R. Crim. P. 1.3 (computation of time), 31.21(b)(2)(A) ("A party must file a petition for review no later than 30 days after the Court of Appeals enters its decision, unless a party files a timely motion for reconsideration in the Court of Appeals . . . ."). Petitioner filed his notice of post-conviction relief on June 27, 2016. (Doc. 10-1 at 109.) As such, the AEDPA clock was tolled before the sentence became final. The clock did not restart until January 20, 2021, when the Arizona Court of Appeals issued its mandate. *See Celaya v. Stewart*, 691 F. Supp. 2d 1046, 1054-55 (D. Ariz. 2010), *aff'd* 497 F. App'x 744 (9th Cir. 2012); *see also Hawkins v. Shinn*, No. CV-21-01299-PHX-DLR-DMF, 2022 WL 3636749, at *8-9 (D.

Ariz. July 5, 2022), *R. + R. adopted*, No. CV-21-01299-PHX-DLR, 2022 WL 3598248 (D. Ariz. Aug. 23, 2022); Doc. 10-2 at 27. Petitioner filed his Petition within AEDPA's statute of limitations. (*See* Doc. 1.)

This, this Petition is timely.

## III.    EXHAUSTION/PROCEDURAL DEFAULT

Respondents urge that Claim III(a) is procedurally defaulted. (Doc. 10 at 11-12.) In his reply, Petitioner asserts his claims are not procedurally default. (Doc. 14 at 1.) However, he does not argue Claim III(a) in any fashion. *Id.* at 1-6. As set forth below, this Court agrees with Respondents.

**Legal Principles**

A district court may consider a petitioner's application for a writ of habeas corpus only if they have "exhausted the remedies available in the courts of the State." § 2254(b)(1)(A). The exhaustion requirement prevents federal courts from unnecessarily adjudicating an issue and affords states the opportunity to correct a constitutional violation. *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

To exhaust a claim, a petitioner must "fairly present" it in each appropriate state court, alerting the courts to its federal nature. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Simply presenting the claim to the state's highest court on discretionary review is insufficient. *Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004). In Arizona, a claim not involving a life sentence or death penalty is exhausted if it is presented to the Arizona Court of Appeals; it need not be appealed to the Arizona Supreme Court. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

For a claim to be fairly presented, a petitioner must have clearly stated its federal basis and nature, along with relevant facts, and the claim must be the "substantial equivalent" to the one presented to the state. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011); *Castillo v. McFadden*, 399 F.3d 993, 998-99 (9th Cir. 2005). It is insufficient to merely present a state law claim that is "largely coextensive" with the federal claim. *Fields v. Washington*, 401 F.3d 1018, 1022-23 (9th

Cir. 2005). If a state law claim is *identical* with the federal claim, then raising only the state law claim may be sufficient to exhaust the federal clam. *Sanders v. Ryder*, 342 F.3d 991, 1000 (9th Cir. 2003). The state must have an opportunity to examine a claim in which the evidence creates a significantly different legal or evidentiary posture. *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014).

A petitioner who fails to follow a state's procedural requirements for presenting a claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted and is generally barred from habeas relief. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

Claims may be procedurally barred from federal habeas review based upon either an express or implied bar. *See Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). If a state court expressly applied a procedural bar when a petitioner attempted to raise a claim in state court and the procedural bar is both independent and adequate, review of the merits of the claim by a federal habeas court is generally barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."). An implied procedural bar may be applied to unexhausted claims where state procedural rules make a return to state court futile. *Coleman*, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies . . . if it is clear that the state court would hold the claim procedurally barred.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989))). The implied procedural bar is often referred to as "technical" exhaustion because even though the claim was not actually exhausted, the petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732.

In Arizona, claims not previously presented to state courts on either direct appeal or collateral review are generally barred from federal review because an attempt to present them to the state court would be futile unless they fit in a narrow category of claims for which a successive or untimely petition is permitted. *See* Ariz. R. Crim. P. 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except for narrow exceptions), 32.4(b)(3) (time bar). Because Arizona's preclusion rules are both independent and adequate, their application to a claim by an Arizona court or their operation precluding a return to state courts to exhaust a claim will procedurally bar subsequent review of the merits of that claim by a federal habeas court. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are independent of federal law); *see also Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting assertion that Arizona courts' application of procedural default rules were "unpredictable and irregular"); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules are strictly applied in post-conviction proceedings). Arizona's time bar under Rules 32.4 is an additional bar that would make a return to state court fruitless. *See, e.g.*, *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (holding that if Arizona habeas petitioner "has any unexhausted claims" they are "procedurally defaulted . . . because he is now time-barred under Arizona law from going back to state court"); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (observing timeliness under Rule 32.4 as grounds for dismissal of PCR petition, distinct from preclusion under Rule 32.2(a)).

Federal habeas review of a procedurally defaulted claim is barred unless the default is excused. A procedural default may be excused if a habeas petitioner establishes either (1) "cause" and "prejudice," or (2) that a fundamental miscarriage of justice has occurred. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992). "Cause" that is sufficient to excuse a procedural default is "some objective factor external to the defense" which precludes a petitioner's ability to pursue the claim in state court. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Prejudice" in the habeas context means actual, objective harm resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 170 (1982) (habeas petitioners

"shoulder the burden of showing, not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage" and infected state proceedings with errors of constitutional dimension). A fundamental miscarriage of justice may occur where a constitutional violation has probably resulted in the conviction of an innocent petitioner. *Murray*, 477 U.S. at 496 (merits of defaulted claim could be reached "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). "[A] petitioner does not meet the threshold requirement [of establishing actual innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). The actual innocence gateway requires that a petitioner present new evidence that is not merely cumulative or speculative. *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

**<u>Procedural Status of Petitioner's Claims</u>**

Petitioner states four grounds for relief and recognizes that Ground three has two claims within it. (Doc. 1 at 5-10; Doc. 1-2 at 7.) He presented the claims in grounds one and four to the state court such that they are exhausted without procedural default. *See Rivera I*, 2016 WL 389490, ¶¶ 1, 11-22; *Rivera II*, 2020 WL 4436259, ¶¶ 11-17. Additionally, Petitioner sufficiently exhausted his second claim in Ground three, often referred herein as Claim III(b), claiming that his appellate counsel was ineffective for failing to raise his choice-of-counsel claim. *See Rivera II*, 2020 WL 4436259, ¶¶ 10.

In Claim II, Petitioner contends the state courts erred in determining his absence had been voluntary. (Doc. 1 at 7; Doc. 1-2 at 4.) He raised this issue to the Arizona Court of Appeals. *Rivera I*, 2016 WL 389490, ¶ 19. The appellate court found Petitioner had waived this argument because he had not presented it to the trial court and had not argued the error was fundamental before the appellate court. *Id.* ¶ 20. The court then considered the merits, "[i]n any event." *Id.* ¶ 21. Thus, Claim II is procedurally defaulted. Respondents did not argue this claim was procedurally defaulted. (Doc. 10 at 11.) To the extent this claim is procedurally defaulted, Respondents have waived the default. *See Morrison v. Mahoney*,

399 F.3d 1042, 1046 (9th Cir. 2005) ("[T]he defense of procedural default should be raised in the first responsive pleading in order to avoid waiver.") The Court will consider the merits of this claim, especially as both the Arizona Court of Appeals and Respondents did the same.

In Claim III(a), Petitioner argues he was denied the right to be represented by the counsel of his choosing. (Doc. 1 at 8; Doc. 1-2 at 5-7.) He raised this issue in his post-conviction proceeding. *Rivera II*, 2020 WL 4436259, ¶ 8. The appellate court found the issue was precluded because it should have been presented on appeal. *Id.* Thus, this claim is procedurally defaulted. Petitioner does not argue this procedural default should be excused. (Doc. 14.) Hence, this Court determines there are no grounds upon which the district court can excuse the procedural default. Claim III(a) should be denied and dismissed without further consideration.

## IV.   MERITS

This Court determines that Petitioner's claims in claims I, II, III(b), and IV are without merit and should be dismissed.

**Merits Review Under AEDPA**

Congress intended the AEDPA to foster federal-state comity and further society's interest in the finality of criminal convictions. *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) ("[AEPDA's] design is to 'further the principles of comity, finality, and federalism.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). Congress's very purpose in enacting the AEPDA was "to restrict the availability of habeas corpus relief." *Greenawalt v. Stewart*, 105 F.3d 1268, 1275 (9th Cir. 1997), *abrogated on other grounds as recognized by Jackson v. Roe*, 425 F.3d 654, 658-61 (9th Cir. 2005).

In the AEDPA, Congress set forth "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions must be given the benefit of the doubt." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (cleaned up). "Under AEDPA, . . . a federal court may disturb a final state-court conviction in only narrow circumstances." *Brown v. Davenport*, 142 S. Ct. 1510, 1518 (2022).

The AEDPA limits the availability of habeas relief for a claim adjudicated on the merits to circumstances where the state court's disposition either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). Petitioners bear the burden of proving that their claims fit one of these criteria. *Pinholster*, 563 U.S. at 181; *Lambright v. Blodgett*, 393 F.3d 943, 969 n. 16 (9th Cir. 2004).

A state-court decision is "contrary to" clearly established federal law when the court applied a rule of law that contradicted the governing law set forth in Supreme Court precedent, or encountered a set of facts "materially indistinguishable" from a Supreme Court decision and yet reached a different result than the Supreme Court. *Early v. Packer*, 537 U.S. 3, 8 (2002). Under § 2254's "unreasonable application" clause, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under th[e Supreme] Court's precedents." *Davenport*, 142 S. Ct. at 1525 (first alteration in *Davenport*) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). *Richter* explained:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement.

*Id*. at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

Section 2254(d)(2) also sets "a daunting standard—one that will be satisfied in

relatively few cases." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016) (quoting *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014))."[I]t is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Davenport*, 142 S. Ct. at 1525 (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)). Instead, the state court's decision must be "objectively unreasonable." *Miller-El*, 537 U.S. at 324.

In determining whether the state court's resolution of a claim was contrary to, or an unreasonable application of, clearly established federal law, federal courts must review the last reasoned state court decision addressing the merits of the claim. *Cook v. Schriro*, 538 F.3d 1000, 1015 (9th Cir. 2008) (citing *Ylst*, 501 U.S. at 803). The reviewing federal court is to be "particularly deferential to [its] state court colleagues." *Loher*, 825 F.3d at 1112 (*Hernandez*, 750 F.3d at 857). The federal habeas court presumes the state court's factual determinations are correct, and petitioners bear the burden of rebutting this presumption by clear and convincing evidence. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also, Miller-El*, 545 U.S. at 240 (describing standard as deferential and "demanding," although not impossible). Additionally, the state court decisions are held to the Supreme Court precedents at "the time the state court renders its decision." *Davenport*, 142 S. Ct. at 1525 (quoting *Pinholster*, 563 U.S. at 182).

**Trial in Absentia**

Petitioner argues the state court's decision that he was properly tried in absentia was contrary to, or involved an unreasonable application of, clearly established Federal law. (Doc. 1 at 5; Doc. 1-2 at 2-3.)[4] The Court disagrees.

The Arizona Court of Appeals concluded Petitioner had waived his presence at trial. *Rivera I*, 2016 WL 389490, ¶ 18. It reasoned that a distinction between pre-trial and

---

[4] Rivera also argues the record does not support the inference that he had waived his right to be present. (Doc. 14 at 2-3.) Rivera does not disagree with the record as summarized by the Arizona Court of Appeals, but instead reasserts his contention from Claim II. *Id.* Thus, the Court will consider this argument together with Claim II.

mid-trial absence would be "anomalous." *Id.* ¶ 17. Additionally, it noted several instances where the trial court had informed Petitioner of the trial date and his need to appear for the trial. *Id.* ¶¶ 2-4.

Petitioner contends *Crosby v. United States*, 506 U.S. 255 (1993), and *Diaz v. United States*, 223 U.S. 455 (1912), prevent finding waiver from absence before a trial commences. (Doc. 14 at 2.) The Arizona Court of Appeals cited and applied both cases. *Rivera I*, 2016 WL 389490, ¶¶ 9, 12-15.

In *Diaz*, the defendant was voluntarily absent twice during his ongoing trial. 223 U.S. at 444. The Supreme Court reasoned that it did "not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced". *Id.* at 457 (quoting *Falk v. United States*, 15 App. D.C. 446, 454 (1899)). Thus, the Supreme Court affirmed the conviction. *Id.* at 459.

In *Crosby*, the Supreme Court held that Federal Rule of Criminal Procedure 43 did not permit trial in absentia for defendant who absconded before trial and was absent at the start of trial. 506 U.S. at 256. The Supreme Court did "not reach Crosby's claim that his trial *in absentia* was also prohibited by the Constitution." *Id.* at 262.

Neither case considered or ruled on whether trying a defendant who fled before a trial commences would be unconstitutional. The Supreme Court has not considered this issue. *See Hagans v. Shinn*, No. CV-19-0475-TUC-JAS (LAB), 2020 WL 1495967, at *4 (D. Ariz. Feb. 20, 2020), *R. + R. adopted sub nom. Hagans v. Ryan*, No. CV-19-00475-TUC-JAS (LAB), 2020 WL 1495335, at *4 (D. Ariz. Mar. 27, 2020) (citing *Fairey v. Tucker*, 132 S. Ct. 2218, 2220 (2012)). Hence, the state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. The Court does not find that the state court's decision was based on an unreasonable determination of the facts.

**Voluntary Absence**

Petitioner maintains the state court's decision that his absence was voluntary was contrary to or an unreasonable application of Supreme Court precedent. (Doc. 1 at 7; Doc. 1-2 at 4; Doc. 14 at 4.) Specifically, Petitioner asserts that he did not have a meaningful choice except to flee because his attorney advised him to "talk to [a] travel agent." (Doc. 1-2 at 4.)

The state appellate court concluded this claim was waived, but it considered the merits in the alternative. *Rivera I*, 2016 WL 389490, ¶¶ 19-22. The appellate court stated that Petitioner had freedom of choice because he could have moved for new counsel. *Id.* ¶ 22.

Federal law requires waiver be voluntary. *Diaz*, 223 U.S. at 455. Voluntary has two separate inquiries. *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010). First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 382 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382-83 (quoting *Burbine*, 475 U.S. at 421).

Petitioner does not argue intimidation, coercion, or deception. (Doc. 1 at 7; Doc. 1-2 at 4; Doc. 14 at 3-4.) He argues the absence of meaningful alternatives implies coercion and deception from his attorney. (Doc. 14 at 4.) Petitioner did not point to—and the Court did not find—any Supreme Court precedent that is contrary to the appellate court concluding that Petitioner could have asked for a new attorney. In fact, the Ninth Circuit has affirmed that affirmed a ruling that a denial of defendant's request for new counsel did not undermine his voluntary choice to absent himself from trial. *See United States v. Robinson*, 921 F.2d 282, at *2 (9th Cir. 1990) (mem.). The state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. The Court does not find that the state court's decision was based on an unreasonable determination of the facts.

**Review of Ineffective Assistance of Counsel Claims Under AEDPA**

The Supreme Court set forth the clearly established federal law governing IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Pinholster*, 563 U.S. at 189. To establish that counsel was constitutionally ineffective under *Strickland*, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance is established when counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

In determining deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955)). To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. This requires courts to consider "the totality of the evidence before the . . . jury." *Id.* at 695. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 100. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.*

**Petitioner's Claims for Ineffective Assistance of Counsel**

Petitioner challenges the effectiveness of both his trial and appellate counsel. (Doc. 1 at 8, 10; Doc. 1-2 at 6-9.) In Claim III(b), he claims his appellate counsel was ineffective in not raising his choice-of-counsel claim on direct appeal. (Doc. 1 at 8; Doc. 1-2 at 6-7.) He argues the sentencing transcript contains evidence that he was denied retained counsel, such that appellate counsel should have conducted an inquiry. (Doc. 14 at 5.) The state appellate court denied this claim because Petitioner failed to support such a claim. *Rivera II*, 2020 WL 4436259, ¶ 10. It specifically noted that "the record is void of any substantive

proof that [Petitioner] retained Ms. Udall as counsel for sentencing." *Id.* Thus, the court concluded Petitioner failed to raise a claim that his appellate counsel's performance was deficient. *Id.* Petitioner did not present an affidavit from either his trial counsel or Ms. Udall to support his claim, even though the post-conviction court had provided "repeated requests for extensions for [that] express purpose." *Id.* ¶ 9.

The Supreme Court has stated that it may be reasonable for appellate counsel to not raise every nonfrivolous claim. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000). In that case, petitioner would need to show that the particular claim was "clearly stronger" than the raised claims. *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). The Arizona Court of Appeals was not unreasonable or acting contrary to established federal law when it concluded that an attorney was not deficient for not raising a claim absent factual and legal support. Petitioner had multiple attempts to procure an affidavit to support his claim and failed to do so. Additionally, there was no formal indication that Ms. Udall had been retained. The state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent because it is not deficient to not raise claims without factual determination. The Court does not find that the state court's decision was based on an unreasonable determination of the facts.

In Claim IV, Petitioner asserts his trial counsel afforded ineffective assistance during plea negotiations. (Doc. 1 at 10; Doc. 1-2 at 8-9; Doc. 14 at 5-6.) The prosecutor offered a plea agreement with a range of 5 to 51 years' imprisonment on three counts—one class two felony and two class three felonies. (Doc. 10-2 at 89.) It would have been the sentencing court's decision whether to sentence Petitioner to concurrent or consecutive sentences. *Id.* The court noted that "typically [he] sentence[d] consecutively when there's multiple victims and when there's a gun involved." *Id.* at 90. Petitioner went to trial and was sentenced to 31.5 years' imprisonment, based on two class two felonies consecutively and all other convictions running concurrently. (Doc. 10-1 at 20-29.) He argues his trial counsel did not explain the plea colloquy and did not provide a written plea agreement for consideration. (Doc. 1-2 at 8.) The appellate court noted that "although [Petitioner] stated

in his petition below that 'he would not have proceeded to trial' if Lansdale had acted differently, he did not say that in his declaration or in his petition for review." *Rivera II*, 2020 WL 4436259, ¶ 15. The court also noted that the trial court had explained Petitioner's exposure under the plea. *Id.* ¶ 13. The court stated that Petitioner had not argued the risks were not explained to him or that he did not understand those risks. *Id.* ¶ 14.

To establish an ineffective-assistance-of-counsel claim during plea negotiations, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) and *Strickland*, 466 U.S. at 694). Counsel has a duty to communicate formal officers from prosecution to defendants. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). The state appellate court was not unreasonable when it identified that Petitioner had not declared that he would have accepted the plea agreement had his counsel acted differently or that he had been informed of the terms of the agreement, even if he did not receive a written agreement. The state appellate court reasonably concluded the trial court had explained the risks of going to trial to Petitioner. Therefore, the state court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent because it is not deficient to not raise claims without factual determination. The Court does not find that the state court's decision was based on an unreasonable determination of the facts.

Based on the above, Petitioner's claims should be denied, and his petition should be dismissed.

## V.   RECOMMENDATION

Claim III(a) is procedurally defaulted. Petitioner's remaining claims lack merit. Accordingly, it is recommended that the district court, after its independent review, deny and dismiss the Petition.

Pursuant to 28 U.S.C. § 636(b)(1) and 72(b)(2), Fed. R. Civ. P., any party may serve and file written objections within fourteen days of being served with a copy of the Report

and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. The Clerk of Court is directed to terminate the referral of this matter. Filed objections should bear the following case number: **4:21-cv-00296-TUC-JGZ**.

Dated this 1st day of March, 2023.

Honorable D. Thomas Ferraro
United States Magistrate Judge